THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 2:12cr124

ANTHONY CHARLES HUNTER,

Defendant.

*MEMORANDUM OPINION AND ORDER*

Before this Court is Defendant Anthony Charles Hunter's Motion to Dismiss the Indictment, filed on June 19, 2013. The Government filed a Response to that Motion on July 19, 2013, and Defendant filed his Reply on July 26, 2013. The Court held a hearing on Defendant's Motion on July 31, 2013, and ordered the parties to submit additional briefing on potential remedies for any Due Process violations. The parties submitted their supplemental memoranda on August 7, 2013, and the matter is now ripe for disposition. For the reasons discussed below, Defendant's Motion to Dismiss is **DENIED**.

I. PROCEDURAL AND FACTUAL HISTORY

On February 20, 2008, Defendant was arrested pursuant to a criminal complaint charging Defendant with violations of 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c)(1)(A) related to an armed robbery that occurred in late 2007 in Virginia Beach, Virginia. Case No. 2:08-cr-60. Defendant appeared before a Magistrate Judge in the Eastern District of Virginia on February 22, 2008 for detention and preliminary hearings. On March 20, 2008, Defendant was indicted and charged with four counts of Interference with Commerce by Robbery, in violation of 18 U.S.C. §

1

1951 and four counts of Brandish, Possess, Use, and Carry Firearms During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A), stemming from four armed robberies. On April 2, 2008, Defendant appeared before a Magistrate Judge for arraignment and entered a plea of not guilty. On May 6, 2008 District Judge Jerome Friedman held a hearing on Defendant's Motion for Psychiatric Examination filed on April 21, 2008. The same day, the Court granted Defendant's motion, finding that there was reasonable cause to believe that he may be suffering from a mental disease or defect under 18 U.S.C. § 4241(a), and ordered that he be committed

> to the custody of the Attorney General for placement in a suitable facility for a reasonable period of time, not to exceed 30 days, for the purposes of examination by a qualified psychiatrist or psychologist to determine whether the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Further, the Court ordered:

> pursuant to the Speedy Trial Act, Title 18, United States Code, Section 3161(h)(1)(A), the time required for trial of the defendant shall be tolled from the date of this Order until the results of said psychiatric exam are received by the Court and all hearings concerning the defendant's competency are concluded, such period being a delay contemplated by Title 18, United States Code, Section 3161(h)(1)(A).

ECF No. 23.

On June 17, 2008, after receiving a letter from the Warden of the Metropolitan Correctional Center in New York requesting additional time to complete the examination, the Court extended the time for completion of Defendant's psychological examination until July 3, 2008. On July 21, 2008, the Court received the psychiatric report. After conducting a hearing on August 12, 2008, the Court entered an Order finding that Defendant "is presently suffering from a mental disease or defect that makes him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." The Court

2

remanded Defendant "to the custody of the Attorney General for hospitalization and treatment at a suitable facility, with the purpose of continuing to evaluate his mental competency" pursuant to 18 U.S.C. §4241(d). ECF No. 27.

On March 9, 2009, the Court received a second report on Defendant's mental condition. On April 10, 2009, the Court conducted another hearing. Based upon these findings and the recommendations of the psychologist, who concluded that Defendant was not likely to be restored to competency in the foreseeable future, the Court ordered Defendant committed to the Custody of the Attorney General for a risk assessment pursuant to 18 U.S.C. § 4246(a). It directed the director of the facility where Defendant would be hospitalized to determine whether or not a certificate should issue finding that Defendant "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." ECF No. 31. Further, the Court found that "the period of delay resulting from examinations regarding the mental competency of a defendant shall be excluded in computing time within which trial must commence [pursuant to] 18 U.S.C. § 3161(h)(4)." *Id.* Defendant was hospitalized at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, and after a hearing on September 18, 2009, Defendant was committed by the U.S. District Court for the Western District of Missouri pursuant to § 4246. Case No. 6:09cv3219. After the Eighth Circuit affirmed that order in January 2010, on February 25, 2010, the Court granted the Government's Motion to Dismiss the Indictment without Prejudice, without objection from Defendant.

Beginning in July 2010, each year that Defendant remained at the Missouri facility a panel convened and issued a Risk Assessment Review Report recommending Defendant's conditional release. It concluded that while Defendant still suffered from a mental disease, his

3

release would not create a substantial risk of danger to others as long as he was released to a group home and continued to receive some care. The Government submitted those reports to the U.S. District Court for the Western District of Missouri, but no action was taken on the reports, no hearing was held, and Defendant was never released. On September 6, 2011, Defendant did file a *pro se* habeas petition in the Missouri court requesting his immediate release and discharge. Case No. 6:11cv3336. He referenced the 2010 report recommending his conditional release, and stated that his liberty was infringed because he was "being unlawfully detained because I'm [a] homeless person." ECF No. 1. On February 14, 2012, the District Court dismissed the petition for lack of a constitutional violation, noting that "efforts are ongoing to secure state placement for [Defendant] in his home state of Virginia. To date, suitable state placement has not been found . . . [and] no state placement is available that meets the Risk Assessment Panel's recommendation for conditional release." ECF No. 14.

On August 8, 2012, the Government filed an eight-count Indictment in the Eastern District of Virginia against Defendant in the instant case, charging Defendant with committing four armed robberies between September 29 and October 15, 2007, two of which were previously charged and two of which were not. The Government later added additional violations of 18 U.S.C. § 1951 in a Superseding Indictment filed on September 20, 2012, charging Defendant with committing five additional robberies between October 9 and October 18, 2007. Defendant was arrested at the Springfield facility and made his initial appearance before a Magistrate Judge on September 20, 2012. The Government moved for a new psychiatric exam on October 10, 2012, which Defendant's counsel opposed. After holding a hearing, the Court granted the motion on November 20, 2012, and ordered that Defendant be committed at Springfield for the purposes of evaluating his competency, pursuant to 18 U.S.C. §

4241(a). The forensic psychological report found that Defendant was malingering and competent, and after holding a competency hearing on June 10, 2013, the Court agreed and set the case for trial.

## II. DISCUSSION

### A. Due Process: 18 U.S.C. § 4246

Section 4246 of the Insanity Defense Reform Act ("IDRA") requires a court to civilly commit to the custody of the Attorney General a person suffering from a mental disease whose release "would create a substantial risk of bodily injury to another person or serious damage to property of another." Individuals eligible for this commitment include those convicted of a crime and nearing the completion of their sentence of incarceration, those against whom all charges have been dismissed because of a mental disease, and those previously committed pursuant to § 4241 (which governs competency determinations pending trial). 18 U.S.C. § 4246(a). The statute provides for discharge from that commitment once (and if) the director of the facility where an individual is hospitalized certifies to the court that committed the individual that the person no longer poses a risk of dangerousness. *See United States v. Curry*, 410 F.2d 1372, 1374 (4th Cir. 1969) ("[T]he statutes intended that a defendant, although found incompetent, cannot be unduly deprived of his liberty unless he will be dangerous to society."). The court may directly order their discharge or may first hold a hearing on the matter. 18 U.S.C. § 4246(e).

Defendant first argues that because he was never formally discharged from § 4246 commitment by the Missouri district court, his indictment and arrest prior to any such discharge violates his due process rights. Although Defendant focuses in his briefing almost exclusively on the statutory requirements, he appears to rest ultimately on his constitutional due process

5

rights. *E.g.*, Mot. to Dismiss 6 ("Mr. Hunter was never formally discharged from Section 4246 custody and, therefore, his re-indictment is a violation of due process rights."); Reply to Resp. to Mot. to Dismiss 4 ("The defendant relies upon the statute, its basic requirements of due process, as well as the basic requirements of due process contained in the Fifth Amendment to [the] Constitution of the United States."). But even if Defendant rests on the statute and whatever relief it might provide him, the Court finds that there has been no statutory violation.

As a preliminary matter, as both the Government and Defendant appear to agree, Defendant has not yet been "discharged" within the meaning of Section 4246, and so cannot be said to have been released from civil commitment without proper procedure. Despite the repeated recommendations of the panel that reviewed Defendant's mental health, no court has yet ordered Defendant's discharge. *See* 18 U.S.C. § 4246(e) (discussing procedures for discharge of a patient by "the court that ordered the commitment"). As the Magistrate Judge noted in its Order committing Defendant to pre-trial detention, Defendant "continues to be held under a civil commitment order" and even if conditionally released pending trial "would remain in the custody of the Bureau of Prisons . . . and probably retur[n] to Springfield." ECF No. 14.

As to whether Defendant may be indicted prior to being discharged from civil commitment, nothing in the statute says or implies that an individual committed pursuant to § 4246 cannot be subject to a pending indictment. As the Government highlights, the First Circuit has held that a pending indictment need not be dismissed because an individual was committed indefinitely pursuant to Section 4246. *United States v. Ecker*, 78 F.3d 726 (1st Cir. 1996). Even the Defendant acknowledges that "[n]either Section 4241 or Section 4246 specifically address what happens to a pending indictment when a defendant is found incompetent to stand trial and subject to indefinite commitment under Section 4246." Mot. to Dismiss 16.

6

Whether Defendant's removal from the Springfield facility pursuant to his arrest warrant violated § 4246 is a somewhat closer question. Although nothing in the statue speaks to that possibility, § 4246 certainly contemplates that a defendant is to remain hospitalized until properly discharged and Defendant's arrest removed him from the facility where he was receiving treatment. On the other hand, it would be unusual to read a statute to implicitly confer (even if only temporary) immunity from prosecution. Additionally, § 4246(d) directs the Attorney General to hospitalize a Defendant only until he no longer poses a danger to the public. At the time of his arrest, the Springfield facility had found that Defendant would not pose such a danger (if conditionally released) three years in a row. It is therefore arguable whether Defendant was even entitled by the statute to remain hospitalized at the Springfield facility (and even less so once the Court deemed him competent). Additionally, the Magistrate Judge who held the bail hearing recommended that Defendant continue to receive treatment while being held pre-trial. ECF No. 14.

In any event, Defendant appears to rest ultimately on his constitutional due process rights. *E.g.*, Mot. to Dismiss 6 ("Mr. Hunter was never formally discharged from Section 4246 custody and, therefore, his re-indictment is a violation of due process rights."); Reply to Resp. to Mot. to Dismiss 4 ("The defendant relies upon the statute, its basic requirements of due process, as well as the basic requirements of due process contained in the Fifth Amendment to [the] Constitution of the United States."). The Due Process Clause prevents (as relevant here) the arbitrary deprivation of an individual's liberty. U.S. Const. Amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .").

Although it is not clear, it further appears that Defendant is relying on his procedural due process rights rather than on the substantive protections the Clause also confers. Failure to

7

follow statutorily-provided procedures does not automatically rise to the level of a constitutional due process violation. *E.g., Maddox v. Stephens*, 727 F.3d 1109, 1124 n.15 (11th Cir. 2013) ("Of course, the law is well established that the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal due process rights."). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To make out a procedural due process violation, Defendant must show that he has a constitutionally cognizable life, liberty or property interest, that state action deprived him of that interest, and that the procedures employed to do so were constitutionally inadequate. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).

The Court concludes that the indictment and arrest did not cause the deprivation of a constitutionally cognizable interest, as they did not create a significant further deprivation of Defendant's liberty beyond what he was already subject to as a result of the indefinite civil commitment order. Defendant went from being indefinitely civilly committed to being held in pre-trial confinement, for which he was arraigned and received a bail hearing, among other procedures. Defendant might contend that § 4246 creates an interest in continued hospitalization and treatment, but the statute appears designed to protect the public more than a defendant, as it focuses on an individual's dangerousness to others. And asking to be *returned* to civil commitment is a strange due process claim. *Cf. United States v. Ferro*, 321 F.3d 756, 760 (8th Cir. 2003) (referring to a defendant's "liberty right to *avoid* involuntary hospitalization" (emphasis added)). Even if there were a deprivation, it is unlikely that Defendant could show that the procedures he did receive were constitutionally inadequate. Determining whether given procedures are "constitutionally sufficient" requires consideration of the private interest affected, the benefit of additional procedures, and the government's interest. *Slade v. Hampton Roads*

8

*Regional Jail*, 407 F.3d 243 (4th Cir. 2005). Defendant's interest is weak for the reasons just discussed, and "[t]he Government has a substantial interest in timely prosecution . . . [a]nd it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost." *Sell v. United States*, 539 U.S. 166, 180 (2003).

Even if there had been a violation of Defendant's due process rights, dismissing the Indictment—the relief he requests—would do little to remedy the violation. Defendant is still subject to the commitment order and would be returned to civil commitment if he were no longer under arrest, and there is no guarantee that he would be released if returned to civil commitment. Additionally, there is at least a possibility that Defendant could still be formally discharged from that commitment even if he remained indicted, particularly in light of his recent competency evaluation. One route for a § 4246 discharge is for a court to simply order it once it receives a certificate from the director of the mental facility, *United States v. McAllister*, 225 F.3d 982, 987-88 (8th Cir. 2000), and Defendant notes the possibility that the recent evaluations could be construed as a "certificate" contemplated by § 4246(e). Mot. to Dismiss 7.

Because there has been neither a statutory nor a due process violation, Defendant's Motion to Dismiss on these grounds is **DENIED**. Nonetheless, the Court does have concerns about Defendant's continued civil commitment order in light of his evaluations over the past several years and the Government's apparent failure to take any action other than initiate a prosecution against the Defendant. The Court therefore **ORDERS** the Government within thirty (30) days of the date of this Order to request a hearing in the District Court for the Western District of Missouri to bring the periodic assessments and Defendant's recent competency evaluation to that court's attention. The Government is further **DIRECTED** to file progress

9

reports on the status of Defendant's civil commitment in this Court every thirty (30) days during the pendency of this prosecution.

### B. Due Process: Re-Indictment

Defendant also contends that he was denied due process rights because the Government re-indicted him after essentially "holding these charges over his head" for years by obtaining a dismissal of the 2008 indictment without prejudice even after the Court made an express finding that he was incompetent and unlikely to ever be restored to competence. The Government notes that by moving to dismiss the indictment without prejudice, they clearly contemplated that they might later re-indict Defendant. Further, Defendant was given ample opportunity and did not object to dismissal of the previous indictment. Defendant responds by arguing that the initial indictment should never have been dismissed without prejudice in the first instance because the statutory language of § 4246 implies that dismissal of criminal charges against an incompetent defendant should always be *with* prejudice.

Despite Defendant's contentions, as this Court has already found, nothing in the statute mandates dismissal of a pending indictment either with or without prejudice. Further, Defendant's reliance on *Jackson v. Indiana*, 406 U.S. 715 (1972), is misplaced. In *Jackson*, the United States Supreme Court found that it was a deprivation of due process to indefinitely commit a defendant solely on the basis of his lack of capacity to stand trial. It concluded that the government must determine in a reasonable period of time whether the defendant was likely to attain competency; if not, the defendant must either be civilly committed or released. *Id.* But the Government followed those procedures in this case, and Defendant has in fact been afforded the opportunity to have his day in Court. Defendant seizes on a statement in *Jackson* that it may be a denial of due process to "hol[d] pending criminal charges indefinitely over the head of one who

10

will never have a chance to prove his innocence." *Id.* at 740. But the Court in *Jackson* never ruled on that issue, and Court of Appeals case law that is on point does not support Defendant. *See United States v. Ecker*, 78 F.3d 726 (1st Cir. 1996). Further, neither *Jackson* nor any other case law Defendant cited bars the re-indictment of one previously deemed incompetent to stand trial.

Defendant's Motion to Dismiss for the reason that his re-indictment violates due process is also **DENIED**.

### C. Speedy Trial

Defendant also argues that the Indictment should be dismissed because the statutory Speedy Trial period has run and because his Sixth Amendment speedy trial rights were violated. The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. Amend. VI. The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, requires that a criminal defendant be brought to trial within seventy days of an indictment or the indictment should be dismissed. Section 3161(h) provides that certain periods of time may be excluded when calculating the seventy day period. Particularly relevant here, § 3161(h)(1)(A) excludes any "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant[,]" Section 3161(h)(4) exempts "any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial," § 3161(h)(5) exempts time between indictments, and § 3161(h)(1)(D) exempts delays resulting from pretrial motions.

#### i. Statutory Clock

##### a. Beginning of Clock

As a preliminary matter, because the initial indictment was ultimately dismissed

voluntarily upon motion of the Government, all time that had run on Defendant's Speedy Trial clock before that indictment was dismissed "carries over" to his re-indictment. *See United States v. Osteen*, 254 F.3d 521, 525-26 (4th Cir. 2001) ("When an indictment is dismissed on the government's motion, and the defendant is thereafter re-indicted on identical charges, the seventy-day Speedy Trial Act period is calculated from the date of the *first* arraignment; however, the period during which no indictment is pending is excluded from the seventy-day calculation.").

The Speedy Trial Act provides that where a plea of not guilty is entered, "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs.*" 18 U.S.C. § 3161(c)(1) (emphasis added). Defendant first appeared before a judicial officer on February 20, 2008, pertaining to a criminal complaint that included only two counts pertaining to a single robbery. Detention and other preliminary hearings were held two days later. Defendant was indicted for that robbery along with three others on March 20, 2008, and appeared for arraignment on that indictment on April 2, 2008.

Defendant argues that because he first appeared before the Court for a detention hearing on February 20, 2008, and the indictment was formally issued against him on March 20, 2008, the speedy trial clock began to run on the later date of March 20, 2008. The Government contends that Defendant did not make his initial appearance on *all* counts of the Indictment until his arraignment on April 2, 2008, and therefore the April 2, 2008 hearing is the event that triggers the statutory speedy trial clock. The Government has failed to cite any authority that

would support this proposition. The statute makes no such distinction between appearances on original and original plus later added charges that form part of the same course of conduct. *See United States v. Carrasquillo*, 667 F.2d 382, 384 (3rd Cir. 1981) ("If a pre-indictment initial appearance were not considered to be an "appearance before a judicial officer of the court in which such charge is pending," then the date of an indictment could never be the date that "last occurs" under section 3161(c)(1). Since this would make the choice of dates provided in Section 3161(c)(1) superfluous, we believe that Congress must have intended that a pre-indictment appearance constitutes an "appearance before a judicial officer of the court in which such charge is pending."). *See also United States v. Parker*, 508 F.3d 434, 438-39 (7th Cir. 2007). The Government is still seeking to try Defendant on the charge originally included in the criminal complaint, so the Court finds no reason the plain language of the statute should not apply.

In calculating the 70 day time period, the Speedy Trial Act excludes "all time between the filing of a motion and the conclusion of the hearing on that motion." 18 U.S.C. § 3161(h)(1)(F). The first motion that was filed in Defendant's case was a Motion for a Competency Determination which defense counsel filed on April 21, 2008. This motion tolled Defendant's speedy trial clock. Therefore, from March 20, 2008, until tolling on April 21, 2008, **31 days** ran on Mr. Hunter's speedy trial clock.

### b. Tolling for Competency Evaluations

The Speedy Trial Act also excludes from the 70 day period any "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." 18 U.S.C. § 3161 (h)(1)(A). From the date of the Motion to Determine Competency until the final competency hearing on April 10, 2009, Defendant underwent various competency examinations and hearings. The parties agree that no additional

time ran on Defendant's speedy trial clock for approximately a full year, from April 21, 2008 until April 10, 2009. They primarily dispute the tolling of the time period after the April 10, 2009 hearing.

On April 10, 2009, after multiple competency evaluations and hearings, the United States District Court in the Eastern District of Virginia issued an order finding that Defendant was not competent for trial and was not likely to regain competency in the foreseeable future. Additionally, the Court ordered that Defendant be remanded to the custody of the Attorney General in order for the director of the medical facility to determine whether or not a certificate pursuant to 18 U.S.C. § 4246 as to Defendant's dangerousness should issue. This Order generally noted that "the period of delay resulting from examinations regarding the mental competency of defendant" shall be excluded from speedy trial. ECF No. 31.

Defendant's primary argument is that the Court's April 10, 2009 Order is at odds with the requirements of another provision of the IDRA, 18 U.S.C. § 4247. Section 4247(b) mandates that:

> the court may commit the person to be examined . . . *for a reasonable period, but not to exceed forty-five days* . . . [and] [t]he director of the facility may apply for a reasonable extension, but not to exceed . . . thirty days . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

Thus, Defendant contends that the Speedy Trial clock restarted on May 25, 2009 when the 45 day statutory period for his § 4246 dangerousness examination ended, and did not stop running until June 29, 2009, when the certificate of dangerousness was filed in the Western District of Missouri. Using this logic, 34 additional days ran on Defendant's speedy trial clock.

The Government argues that after the Court's May 6, 2008 hearing Defendant was found to be incompetent and ordered to undergo examinations. Thereafter, Defendant was at all times

14

undergoing examinations related to his competency within the meaning of the Speedy Trial Act, and thus, the calculation of the time between May 25, 2009 and June 29, 2009 is irrelevant because the Speedy Trial clock was tolled until the indictment was dismissed on February 25, 2010.

The Fourth Circuit Court of Appeals has yet to squarely address this issue, however, the Government's argument is supported by precedent from other courts. *See White v. United States*, 273 F. App'x. 559, 565 (7th Cir. 2008) ("[T]here is no sanction for exceeding the time limits in § 4247(b), and we have declined to incorporate the time limits from that statute into the Speedy Trial Act, which sets no limit on the period that is excluded for competency or other mental evaluations."); *United States v. Gurley*, 1990 WL 177318 at *4-6 (6th Cir. Nov. 13, 1990) (excluding from the speedy trial clock the entire sixteen-month delay due to the defendant's mental incompetency under § 3161(h)(4)); *Barfield v. Settle*, 209 F.Supp. 143 (W.D. Mo. 1962) (holding that a defendant's continued detention under findings that he was probably dangerous and incompetent to stand trial did not entitle him to dismissal of the charges against him on the grounds that he had been denied a speedy trial). In *White*, the Seventh Circuit further noted that "the first period [defendant] challenges . . . was excludable because [he] had been adjudicated incompetent and committed for treatment." (citing 18 U.S.C. § 3161(h)(4) and *United States v. Neville*, 82 F.3d 750, 763 (7th Cir.1996)).

Similarly, in addressing whether both delays for mental competency proceedings and transportation delays "stopped the clock" the Ninth Circuit found that:

> The clock stopped running . . . when the parties stipulated and the district court approved a psychological exam to determine [defendant]'s competency. . . [defendant] contends that there were days during this period of time that should not have been excluded because there was a transportation delay in excess of that permitted under 18 U.S.C. § 3161(h)(1)(H). However, regardless of the merits of that issue, the time in question was still excludable because it was separately

attributable to a delay pertaining to proceedings associated with determining the mental competency of the defendant and resolving motions pertaining thereto.

*United States v. Tewid*, 86 F. App'x. 224, 225 (9th Cir. 2003). Defendant relies on *United States v. Jones*, 887 F.2d 492, 493 (4th Cir. 1989), but there the Fourth Circuit merely discussed as background the decision of the court below, which accords with Defendant's position here. But the correctness of that position was not at issue in the case. In light of the precedent from other circuits and the plain language of the Speedy Trial Act, the Court will exclude all of the time from April 21, 2008, until the first indictment was dismissed at the motion of the Government in February 2010.

### c. Current Indictment

The parties also disagree about how much time has run (if any) since Defendant's arrest and re-indictment. However, the Court need not resolve this dispute at this juncture because even accepting Defendant's calculations for this time period, Mot. to Dismiss 13, the 70 day time period has not been exceeded.

### ii. Sixth Amendment Speedy Trial

Defendant argues that even if his statutory right to a Speedy Trial has not been violated, his Sixth Amendment speedy trial rights have been encroached upon. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. Amend. VI. The United States Supreme Court has rejected a bright line test to determine whether a defendant's Constitutional right to a speedy trial has been violated, and instead has outlined four factors to be weighed in a balancing test. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). "It will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002).

To establish a violation of the Sixth Amendment right to a speedy and public trial, a defendant must show first that the Amendment's protections have been triggered by "arrest, indictment, or other official accusation." *Doggett v. United States*, 505 U.S. 647 (1992). The defendant must then show that on balance, four separate factors weigh in his favor: (1) whether the delay before trial was uncommonly long; (2) whether the government or the defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as a result of the delay. *United States v. Thomas*, 55 F.3d 144, 148-49 (4th Cir. 1995) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

To initiate the *Barker* analysis, the Court must first consider whether the length of the delay between the defendant's initial appearance and the trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651. Ordinarily, a delay approaching one year is presumptively prejudicial. *Id.* at 652 n. 1. However, a delay that exceeds one year does not, in itself, necessarily establish a violation of the defendant's rights to a speedy trial. *Barker* at 533–36 (holding that more than a five year delay, while extraordinary, did not violate the defendant's right to a speedy trial); *United States v. Johnson*, 48 F. App'x 871, 874 (4th Cir. 2002) (holding that the eight-month delay between the defendant's arrest and his trial was not uncommonly long because the combination of his numerous pretrial motions and psychiatric evaluation caused significant pretrial delay).

Second, the court must consider the reason for the delay. *Barker*, 407 U.S. at 531. "Delay 'to hamper the defense' weighs heavily against the prosecution, while delay caused by the defense weighs against the defendant." *Vermont v. Brillon*, 129 S. Ct. 1281, 1291 (2009) (citing *Barker*, 407 U.S. at 530). Third, the court must consider whether and how

Defendant asserted his right to a speedy trial. "Failing to assert the right will make it difficult for a defendant to prove he was denied a speedy trial." *Barker*, 407 U.S. at 532. The Fourth Circuit has held that asserting this right too late can be held against the defendant. *United States v. Grimmond*, 137 F.3d 823, 829 (4th Cir. 1998) (holding there was no violation of a defendant's speedy trial right after a thirty-five month delay, noting the fact that the defendant waited until four months before trial to assert this right). Finally, and most importantly, the court must determine whether Defendant has been prejudiced by the delay. The court in *Barker* specifically directs the court to consider: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) impairment of the accused's defense. *Barker*, 407 U.S. at 532.

Although the delay in this case has indeed been lengthy, the Court concludes that Defendant's Sixth Amendment right to a speedy trial has not been violated. A criminal complaint was first filed against Defendant in January 2008, nearly six years ago. Therefore, the delay is presumptively prejudicial, and the fourth factor of the *Barker* analysis weighs heavily in Defendant's favor. *See Page v. Lockyer*, 200 F. App'x 727, 728 (9th Cir. 2006) (finding a delay over six years to be "presumptively prejudicial" but nonetheless concluding there was no speedy trial violation); *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) (delay greater than one year is presumptively prejudicial); *United States v. Thomas*, 55 F.3d 144, 149-50 (4th Cir. 1995).

As to the first factor—the length of the delay—the Court does not consider the entire six-year time frame as relevant to the Sixth Amendment analysis. Like the Speedy Trial Act, 18 U.S.C. § 3161(h)(5), when the Government voluntarily dismisses an indictment without prejudice, "the Sixth Amendment does not require counting the time between indictments." *United States v. Colombo*, 852 F.2d 19, 24 (1st Cir. 1988). *See also United States v. Sample*, 713

F.2d 298, 301-02 (7th Cir. 1983) (same). *But see United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006) (declining to resolve the issue). Excluding the time when no indictment was pending, the delay in this case amounts to a little over three years. That factor, too, weighs in Defendant's favor.

But the other two factors weigh in the Government's favor and ultimately dispose of Defendant's claim. As to the third factor—the timeliness of the assertion of his right—Defendant did not raise a Sixth Amendment speedy trial claim during the two-year pendency of the first indictment, from 2008 to 2010, and Defendant filed the instant motion approximately ten months after he was re-indicted. Finally, the reason for the delay does not weigh against the Government. Much of the delay during the two-year period when the first indictment was pending was caused by necessary examinations and hearings regarding Defendant's competency and mental illness. The Government promptly sought dismissal of the Indictment after the Eighth Circuit affirmed Defendant's indefinite commitment. Similarly, much of the one-year delay since Defendant's re-indictment has been due to complications resulting from Defendant's status—and the ultimate conclusion was that his symptoms during that time period resulted from his own malingering.

Defendant's Motion to Dismiss because of his speedy trial rights is **DENIED**.

### III. CONCLUSION

For the reasons previously stated, Defendant's Motion to Dismiss is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 30, 2013

Raymond A. Jackson
United States District Judge